## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| Kenneth D. Lowther, Jr. and Rebecca L. Lowther, as parents and next friend of their minor daughter, D.L.;<br><br>Donald Sedlacek and Jennifer Sedlacek, as parents and next friend of their minor daughter, T.S.; and<br><br>Brian Scobee and Angie Scobee, as parents and next friend of their minor daughter, M.S.;<br><br>Plaintiffs,<br><br>v.<br><br>Bennington Public School District Board of Education, a/k/a Bennington Public Schools; and Does 1 through 50,<br><br>Defendants. | Case No. _____ |

## **<u>COMPLAINT</u>**

The above-captioned Plaintiffs, Kenneth D. Lowther, Jr. and Rebecca L. Lowther, as parents and next friend of their minor daughter, D.L.; Donald Sedlacek and Jennifer Sedlacek, as parents and next friend of their minor daughter, T.S.; and Brian Scobee and Angie Scobee, as parents and next friend of their minor daughter, M.S., ("Plaintiffs"), respectfully file this Complaint against Defendants, Bennington

1

Public School District Board of Education, a/k/a Bennington Public Schools and Does 1 through 50, ("Defendants"), and allege as follows:

## STATEMENT OF THE CASE

1.      This action is posed for declaratory and injunctive relief. Defendants have violated (1) Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 et seq. ("Title IX") and the regulations adopted thereto, and (2) the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983, by illegally and intentionally denying Plaintiffs' daughters the equal treatment and benefits that must necessarily accompany an equal opportunity to participate in athletics.

2.      Defendants' denial of equal treatment and benefits constitutes intentional discrimination against the Plaintiffs' daughters based solely on their gender. Specifically, Defendants have discriminated against Plaintiffs' daughters in the following areas: (1) funding of athletics; (2) provision of equipment and supplies; (3) scheduling of games and practice times; (4) travel and/or per diem; (5) opportunities to receive coaching; (6) provision of locker rooms and/or facilities for both practice and competition; (7) provision of training and/or medical facilities and services; and (8) provision of publicity.

3.      This action seeks to redress the deprivation of the Plaintiffs' daughters' rights to receive the equal treatment and benefits which must necessarily accompany

an equal opportunity to participate in interscholastic and other school-sponsored athletics. This action seeks a Declaratory Judgment that Defendants have violated the Plaintiffs' daughters' rights under federal law. This action further seeks an injunction requiring Defendants to immediately cease their discriminatory practices and to remedy the effects of their discriminatory practices and to remedy the effects of their discriminatory conduct.

4.      Plaintiffs seek injunctive relief which, among other things, requires that Defendants provide Plaintiffs' daughters with treatment and benefits equivalent to that provided to the boys' athletic teams at Bennington Public Schools.

## JURISDICTION AND VENUE

5.      The Plaintiffs' first claim arises under 20 U.S.C. §1681, et seq. and its interpreting regulations. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

6.      The Plaintiffs' second claim arises under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

7.      Jurisdiction for declaratory and other relief is invoked pursuant to 28 U.S.C. §§ 2201(a) and 2202.

8.      Venue is proper pursuant to 28 U.S.C. § 1391(b). These claims arose in Bennington, Douglas County, Nebraska, which is within the jurisdiction of this Court.

## **THE PARTIES**

9.      Plaintiffs Kenneth D. Lowther, Jr. and Rebecca L. Lowther are the parents of D.L., a 16-year-old 11th grade student at Bennington High School. D.L. is a talented athlete who participates in softball at Bennington High School. She has endured the unequal treatment and benefits directed by Bennington Public Schools toward its female athletes. Kenneth D. Lowther, Jr., Rebecca L. Lowther and D.L. are residents of Bennington, Nebraska, which is within the jurisdiction of this Court.

10.     Plaintiffs Donald Sedlacek and Jennifer Sedlacek are the parents of T.S., a 16-year-old 11th grade student at Bennington High School. T.S. is a talented athlete who participates in softball and basketball at Bennington High School. She has endured the unequal treatment and benefits directed by Bennington Public Schools toward its female athletes. Donald Sedlacek, Jennifer Sedlacek and T.S. are residents of Bennington, Nebraska, which is within the jurisdiction of this Court.

11.     Plaintiffs Brian Scobee and Angie Scobee are the parents of M.S., a 15-year-old 9th grade student at Bennington High School. M.S. is a talented athlete who participates in softball and basketball at Bennington High School. She has endured the unequal treatment and benefits directed by Bennington Public Schools toward

4

its female athletes. Brian Scobee, Angie Scobee and M.S. are residents of Bennington, Nebraska, which is within the jurisdiction of this Court.

12.    Defendant Bennington Public Schools is a public school district authorized by Nebraska law to operate and control Bennington High School, where the Plaintiffs' daughters play softball and basketball. Therefore, Defendant's conduct is considered state action under 42 U.S.C. §1983. Bennington Public Schools is located in Bennington, Douglas County, Nebraska, and a substantial part of the events or omissions giving rise to this lawsuit occurred in Douglas County, which is within the jurisdiction of this Court. Since the passage of Title IX, Bennington Public Schools has received and continues to receive federal financial assistance and the benefits therefrom. Therefore, all programs at Bennington Public Schools, including athletics, are subject to the requirements of Title IX.

13.    The named Plaintiffs are ignorant of the true names and capacities of Does 1-50, but believe them to be employees of Bennington Public Schools or members of the Bennington Public School District Board of Education. Plaintiffs will seek to amend this Complaint to set forth their true names and capacities when they are ascertained. Plaintiffs are informed and believe, and on that basis allege, that each of these fictitiously named defendants is responsible in some manner for the discriminatory actions alleged herein and that each is a resident of the State of Nebraska and thus is subject to the jurisdiction of this Court.

## GENERAL ALLEGATIONS
## THE REQUIREMENTS OF TITLE IX

14.     Title IX, enacted in 1972, provides in relevant part:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a). The Civil Rights Restoration Act of 1987 made Congress' intent plain that "program or activity," as used in Title IX, applies to any program or activity so long as any part of the public institution receives federal financial assistance. 20 U.S.C. § 1687. Thus, Bennington Public Schools is subject to Title IX even if none of the funding for either its girls' or boys' athletic programs comes specifically from federal sources.

15.     In 1975, the Department of Health, Education and Welfare (the predecessor of the United States Department of Education ("DOE")) adopted regulations interpreting Title IX. These regulations are codified at 34 C.F.R. Part 106 (the "Regulations").

16.     With regard to athletic programs, § 106.41(a) of 34 C.F.R. provides that interscholastic athletics are included within the "program or activity" requirements of Title IX:

> No person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club or intramural athletics offered by a recipient ...

6

17.   34 C.F.R. § 106.41 (c) specifies ten (10) factors that are to be considered in the determination of equal athletic opportunity:

1.  Whether the selection of sports and levels of competition effectively accommodate the interest and abilities of members of both sexes;

2.  The provision of equipment and supplies;

3.  Scheduling of games and practice times;

4.  Travel and per diem allowance;

5.  Opportunity to receive coaching and academic tutoring;

6.  Assignment and compensation of coaches and tutors;

7.  Provision of locker rooms, practice and competitive facilities;

8.  Provision of medical and training facilities and services;

9.  Provision of housing and dining facilities and services; and

10. Publicity.

Another factor to be considered is a school's "failure to provide necessary funds for teams for one sex." Id.

18.   In 1979, the office of Civil Rights of the Department of Education ("OCR") issued a policy interpretation of Title IX and the Regulations. This policy interpretation is found at 44 Fed. Reg. 71413 (1979) (the "Policy Interpretation").

19.     The Policy Interpretation provides that, in order to comply with Title IX and 34 C.F.R. § 106.41(c), schools must provide equal athletic opportunities in three general areas: (1) awarding of scholarships (aimed primarily at problems at the intercollegiate level); (2) participation opportunities (including both the number of opportunities and whether the selection of sports and the level of competition effectively accommodate the interests and abilities of members of both sexes); and (3) treatment and benefits. 44 Fed. Reg. at 71414.

20.     Under both the Regulations and the Policy Interpretation, compliance in the area of equal treatment and benefits is assessed based on an overall comparison of the male and female athletic programs, including an analysis of factors (2) through (10) of 34 C.F.R. § 106.41 (c) listed above and an analysis of whether the necessary funds are provided for teams of both sexes.

21.     The Regulations require that sponsors of interscholastic and other school-sponsored athletics (such as Bennington Public Schools) take such remedial actions as are necessary to overcome the effects of gender discrimination in violation of Title IX. See 34 C.F.R. § 106.3(c). On information and belief, any remedial actions which Defendants have taken in the past have been insufficient to satisfy Defendants' obligations under Title IX.

22.     The Regulations further require that sponsors of interscholastic and other school-sponsored athletics comply with the Regulations within three years of

8

their effective date (which was July 21, 1975). Now, more than forty-five (45) years later, Defendants have still not fully complied with Title IX.

## THE U.S. CONSTITUTION

23.     The Fourteenth Amendment to the United States Constitution requires that a state shall not "deny to any person within its jurisdiction the equal protection of the laws."

24.     Under 42 U.S.C. § 1983, Defendants may be held liable for their actions in violating Plaintiffs' daughters' rights under the Fourteenth Amendment.

## INJUNCTIVE RELIEF

25.     Plaintiffs are entitled to injunctive relief to end Defendants' unequal, discriminatory, and unlawful treatment of female student athletes. Because of Defendants' acts and omissions, Plaintiffs' daughters continue to be deprived of the rights guaranteed to them by the United States Constitution and the laws of the United States. Failure to grant the injunctive relief requested will result in irreparable harm to Plaintiffs' daughters in that Plaintiffs' daughters' rights will be violated and that Plaintiffs' daughters will never be able to participate in interscholastic and/or other school-sponsored athletics on an equal basis with their male classmates. Accordingly, Plaintiffs do not have an adequate remedy at law for this harm. This threatened harm far outweighs any possible harm that granting injunctive relief might cause Defendants. Finally, the injunctive relief sought would in no way

9

disserve the public interest but, on the contrary, would prevent discrimination based on gender and would promote the goal of full equality before the law.

## ATTORNEYS' FEES

26.    Plaintiffs have been required to retain the undersigned attorneys to prosecute this action. Plaintiffs are entitled to recover reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## FIRST CLAIM FOR RELIEF: TITLE IX
### (Unequal Treatment and Benefits)
### (Against Bennington Public School District Board of Education, a/k/a/ Bennington Public Schools only)

27.    Plaintiffs reallege and incorporate herein by this reference paragraphs 1 through 26 inclusive of this Complaint.

28.    Bennington Public Schools, by its conduct, has intentionally violated Title IX by knowingly and deliberately discriminating against female students, including the Plaintiffs' daughters, by failing to provide them with treatment and benefits which are comparable overall to the treatment and benefits provided to male athletes.

29.    On information and belief, Plaintiffs allege that Bennington Public Schools has failed to comply with Title IX by failing to provide their daughters with comparable treatment and benefits including, but not limited to, in the following areas and illustrative examples:

10

(1)    Bennington Public Schools funds athletics in a manner that discriminates against Plaintiffs' daughters and other female athletes in its athletic program. For example, Bennington Public Schools allows the infusion of more outside funds for boys' sports as compared to girls' sports, including more money for the baseball program as compared to the softball program.

(2)    Bennington Public Schools provides male athletes with equipment and supplies in a manner that discriminates against female athletes in its athletic program. For example, the softball program is not provided its essential equipment and supplies. The baseball program is provided more balls of superior quality as compared to the softball program. The football program is provided its essential equipment and supplies, including quality footballs. The baseball program is provided more uniforms than the softball program. Bennington Public Schools also provides uniforms of superior quality and more frequently to the boys' basketball program as compared to those it provides to the girls' basketball program. The football program is provided more and higher quality uniforms as compared to female athletes, including softball players. The baseball program is provided a mobile batting practice cage. The softball program is not provided a mobile batting practice

cage. The baseball program is provided a working pitching machine. The softball program is not provided a working pitching machine. The baseball program is provided more safety screens of higher quality and better condition as compared to the safety screens provided to the softball program.

(3)    Bennington Public Schools discriminates against Plaintiffs' daughters and other female athletes in its athletic program in the scheduling of games and practice times. For example, Bennington Public Schools provides opportunities for off-season training to the baseball program that are superior to those provided to the softball program. As a further example, the scheduling of softball games makes it more difficult for the team to qualify for post-season play as compared to the scheduling of baseball games. Additionally, Bennington Public Schools routinely schedules girls' basketball games at the earlier times, reserving the premium game time slot for boys' basketball.

(4)    Bennington Public Schools discriminates against Plaintiffs' daughters and other female athletes in its athletic program in the provision of travel. For example, the School District schedules Varsity girls' basketball games for the early time slot. The School District requires the Varsity girls' basketball players to travel to away games by bus with the

Junior Varsity boys' and girls' basketball teams, and wait onsite for the Junior Varsity girls' and boys' games to conclude before they play their game. The Varsity boys' basketball players, in contrast, are transported later in the day, arriving in time for their game without the requirement of waiting onsite, as the Varsity girls are required to do.

(5)  Bennington Public Schools discriminates against Plaintiffs' daughters and other female athletes in its athletic program in the opportunities to receive coaching. For example, the baseball program currently has five coaches, while the softball program currently has three coaches. Bennington Public Schools provides baseball coaches who collectively have more experience than the softball coaches provided by Bennington Public Schools.

(6)  Bennington Public Schools supplies superior locker rooms and/or practice facilities and competition facilities to boys as compared to girls in its athletic program. For example, Bennington Public Schools provides two fields for the baseball program, a Varsity field, Lynn R. Pruess Field, that is used by the Varsity and Junior Varsity baseball players and another field, Hickey Field, that is used by the Junior Varsity and Reserve baseball players. Bennington Public Schools provides only one field for the softball program. The Varsity baseball program is

13

provided a second-story, enclosed press box, measuring approximately 420 square feet. The "press box" provided to the softball program is a table set on the ground. The sound system provided for the baseball program is superior to that provided to the softball program, and is kept and utilized inside the enclosed baseball press box. The inferior sound system provided to the softball program is of course simply set on the open table, since there is no actual softball press box. The football facility also has an enclosed press box. The Varsity baseball facility has security lights for the security of the baseball players and facilities. The softball facility has no such feature for the security of the softball players and facilities. The Varsity baseball facility has security cameras for the protection of the baseball players and facilities. The softball facility has no security cameras for the protection of the softball players and facilities. The Varsity baseball dugouts are larger than the softball dugouts. The Varsity baseball dugout walls are solid, constructed of concrete block. The softball dugout walls are chain link. The Varsity baseball dugout benches are two-tier, major league-style benches. The softball dugout benches are inferior one-tier benches. The Varsity baseball dugout screens are superior to the softball dugout screens. The Varsity baseball dugout screens are constructed of high-quality material,

14

in a half wall set in front of the dugout to create a spacious, porch effect. The softball screen is a chainlink full wall on the front of the dugout, which creates an enclosed, cage effect. The press box and dugouts provided to the Varsity baseball players are painted in school colors. Neither the softball "press box" table nor the dugouts at the softball facility are painted in school colors, since they have no walls to paint. The Varsity baseball facility has a covered ticket booth. The softball facility has no ticket booth. The Varsity baseball facility field lights are superior to the softball facility field lights. The Varsity baseball facility has two spacious bullpens, one for the home team and one for the visitors' team. The softball facility has no bullpens. The Varsity home baseball bullpen is lighted. No softball bullpen is lighted, since there are no softball bullpens. Both Varsity baseball bullpens have screens separating the bullpens from the spectator areas. The softball facility has no such screens separating the bullpen from the spectator areas, since there are no softball bullpens. The Varsity baseball facility has seating for approximately fifty percent more fans than the softball facility. Part of the spectator seating at the Varsity baseball facility is stadium-type, which is raised to enhance spectator visibility. The softball facility has no such enhanced, raised stadium-type seating. The spectator seating at

the Varsity baseball facility is adequate. The spectator seating at the the football facility is also adequate. The spectator seating at the softball facility is not adequate. The Varsity baseball facility has four outdoor hitting tunnels. The softball facility has half as many, with just two outdoor hitting tunnels. Two of the Varsity baseball facility's hitting tunnels are lighted. None of the softball facility's hitting tunnels are lighted. The varsity baseball hitting tunnels have quality nets that are weighted down for the safety of the baseball players. The softball hitting tunnels nets have many holes and are not secured at the bottom, creating an unsafe environment for the softball players. The Reserve baseball players are also provided their own outdoor hitting facilities on the separate field provided by the School District. Bennington Public Schools provides the Varsity baseball players with modern public restrooms. Bennington Public Schools provides the softball players with porta potties, which of course do not even have running water for the girls to wash their hands. The football facility also has restrooms with running water. The concession stand at the Varsity baseball facility is superior to the concession stand at the softball facility. The Varsity baseball concession stand has a large grill for preparing hamburgers, hot dogs, brats and other traditional ballpark cuisine which enhances the

ballpark experience. The softball concession stand has no grill for preparation of such iconic ballpark fare. The Varsity baseball concession stand has a large laundry sink for sanitary purposes. The softball concession stand has no sink. The Varsity baseball concession stand has running water. The softball concession stand has no running water. The football facility also has concession stands with running water. The Varsity baseball concession stand is a concrete block building on the lower level of the press box, with windows for serving food. The softball concessions are served through an open garage door out of an equipment shed. The Varsity baseball facility has running water in various locations, including in the concession stand and restrooms. The only running water provided for the softball players (or anyone else at the softball facility) is a lone freeze pipe behind one of the dugouts. While a bond was passed approximately one year ago which included a press box, concession stand and restrooms to be built behind home plate, nothing has been built to date. The School District is actively planning to relocate a portion of the project and is seeking bids for a scaled down option of the project which would result in a press box substantially smaller than the current Varsity baseball press box, leaving no basis for confidence in the scope, location, substance, detail or timing of any of

17

that project. The foundation of the backstop at the Varsity baseball facility is constructed of finished concrete, covered with padding for player safety. The foundation of the backstop at the softball facility is made of wood planks, and has no padding for player safety. The Varsity baseball backstop is constructed of poles and major league-type netting. The softball backstop is inferior as compared to the Varsity baseball backstop, constructed of inferior pipes and bare chainlink. Behind the Varsity baseball backstop are columns for setting bricks sold in the "Engraved Legacy Brick Campaign." The softball facility has no such feature. The Varsity baseball field has a warning track for player safety. The softball field has no warning track for player safety. The Varsity baseball facility has several secure storage facilities that the baseball program is not required to share with any other sport. The softball program has fifty percent less storage as compared to the Varsity baseball program and is required to share the smaller amount of storage that it does have with another sport. Maintenance at the Varsity baseball facility is superior to maintenance at the softball facility. The softball field is uneven, exposing softball players to injury. The Varsity baseball infield material is superior to the softball infield material. The Varsity baseball field has superior drainage as compared to the softball field.

The softball facility infield material routinely washes into the dugouts. The football facility also has a superior field surface with superior drainage as compared to the softball facility. The Varsity baseball facility has a growth cover to protect the field in the winter. The softball facility has no growth cover. The Varsity baseball home bullpen has a cover tarp. The softball facility has no bullpen tarp, since it has no bullpen. The Varsity baseball field has a homeplate/batter's box tarp. The softball field has no home plate/batter's box tarp. The Varsity baseball field has a pitching mound tarp. The softball field has no pitching circle tarp. The Varsity baseball facility's scoreboard is superior to the softball facility's scoreboard. The Varsity baseball scoreboard measures approximately 450 square feet while the softball scoreboard measures approximately 50 square feet, which makes the baseball scoreboard nine times the size of the softball scoreboard. The Varsity baseball scoreboard is a ten-inning scoreboard. The softball scoreboard is a one-inning scoreboard. The Varsity baseball scoreboard has a feature to identify the player at bat. The softball scoreboard has no feature to identify the player at bat. The Varsity baseball field has new on-deck circles. The softball field has no on-deck circles. The Varsity baseball outfield fence is superior to the softball outfield fence. The

19

Varsity baseball outfield fence is a permanent fence. The softball outfield fence is a temporary fence. The permanent Varsity baseball outfield fence (as well as the baseball sideline fences) are made of vinyl-coated chainlink. The temporary softball outfield fence (as well as the softball sideline fences) are made of inferior, bare chainlink. The permanent Varsity baseball outfield fence has a windscreen. The temporary softball outfield fence has no windscreen. The permanent Varsity baseball outfield fence has distance signs. The temporary softball outfield fence does not have distance signs. The permanent Varsity baseball outfield fence has revenue producing advertisement signs. The temporary softball outfield fence has no revenue producing advertisement signs. The Varsity baseball program is provided with a flagpole at dead centerfield for the American flag, set in a memorial park with benches placed on paving brick at its base, and up-lighting for illuminating the flag. The softball facility has no flag pole. Instead, observers of the National Anthem must look off to the football stadium to find a flag. The School District provides baseball players superior access to their field as compared to the access it provides softball players. The School District leases Lynn R. Pruess Field for the use of the Varsity baseball program. The Varsity baseball players have

virtually year-round access to this field through not only their high school season, but also the summer American Legion season and the off season as well. The softball players do not have similar access to the softball field outside of their season. The Varsity baseball facility is completely enclosed with a perimeter fence, which restricts access to the baseball field. The softball facility is not fully enclosed with a perimeter fence, leaving access to the softball field virtually unrestricted. To enforce the restricted access at the Varsity baseball facility, there are signs stating, "BENNINGTON LEGION/HIGH SCHOOL USE ONLY" and "NOT OPEN FOR PUBLIC USE - VIOLATORS WILL BE PROSECUTED," while the signs at the softball facility merely say "NO PETS ALLOWED BEYOND THIS POINT" and "FIELD USE MUST BE APPROVED BY BPS OFFICIALS."

(7)   Bennington Public Schools discriminates against Plaintiffs' daughters and other female athletes in its athletic program in the provision of training facilities and services. For example, the male athletes at Bennington Public Schools are provided superior access to appropriate weight training facilities and weight training equipment as compared to female athletes, including the Plaintiffs' daughters. All 6:00 am weightlifting is assigned to girls' sports. As a further example, the

baseball program is provided more and better skills development equipment and programs as compared to the softball program. As a further example, male athletes are provided superior access to trainers during their season as compared to female athletes, including softball players.

(8)   Bennington Public Schools discriminates against Plaintiffs' daughters and other female athletes as compared to male athletes in its athletic program in the provision of publicity. For example, Bennington Public Schools consistently provides less publicity for its softball program as compared to its baseball and football programs, including in the quality of game streaming.

30.   The imbalance in the treatment of female and male athletes at Bennington Public Schools, as detailed above, demonstrates Bennington Public Schools' intentional and conscious failure to comply with Title IX.

31.   Bennington Public Schools' conduct has persisted despite the mandates of the Regulations, particularly 34 C.F.R. §§ 106.3(c) and 106.41(d), and the Policy Interpretation.

32.   Bennington Public Schools' conduct violates 20 U.S.C. § 1681 et seq., as interpreted by 34 C.F.R. §§ 106.31 and 106.41 and the Policy Interpretation thereof.

22

## SECOND CLAIM FOR RELIEF: EQUAL PROTECTION
### (Against all Defendants)

33.    Plaintiffs reallege and incorporate herein by this reference paragraphs 1 through 32 inclusive of this Complaint.

34.    Defendants, by their failure to provide Plaintiffs' daughters with equivalent treatment and benefits as the male athletes, through practices and polices of discrimination of a systemic nature (as detailed above), have purposefully and illegally discriminated against Plaintiffs' daughters and other female students on the basis of gender, and have intentionally and illegally deprived them of their rights to equal protection secured by the Fourteenth Amendment to the United States Constitution.

35.    Defendants have illegally failed and refused to remedy the unequal treatment and benefits received by Plaintiffs' daughters and other female athletes as compared to male athletes at Bennington Public Schools. Therefore, Defendants' actions constitute a knowing and illegal disregard for Plaintiffs' daughters' constitutional rights.

36.    Section 1983 of Title 42 of the United States Code provides, in part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

37.     When Defendants engaged in the improper actions described above, they were acting under color of law for purposes of the Equal Protection Clause of the United States Constitution and 42 U.S.C. § 1983. Under this section, the Defendants are liable for their violations of the Plaintiffs' daughters' constitutional rights under the Fourteenth Amendment.

## **RELIEF REQUESTED**

WHEREFORE, on each of their claims, Plaintiffs respectfully pray that this Court:

A.     Enter an order declaring that Defendants have engaged in a past and continuing pattern and practice of discrimination against female students, including Plaintiffs' daughters, on the basis of gender in violation of Title IX and the regulations promulgated thereunder (including unequal treatment and benefits), and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

B.     Issue a permanent injunction (a) restraining Defendants and their officers, agents, employees, successors and any other persons acting in concert with them, from continuing to maintain practices and policies of discrimination against

Plaintiffs' daughters on the basis of gender, and (b) requiring Defendants, immediately upon issuance of the injunctive order, to adopt and implement a budget and plan which corrects and remediates Defendants' violation of Title IX and the Fourteenth Amendment. Such a plan should include, among other things, providing Plaintiffs' daughters and other female athletes with treatment and benefits comparable to those provided to male athletes.

C.     Grant an expedited hearing and ruling on the permanent injunction request in paragraph B above.

D.     Award Plaintiffs their reasonable attorneys' fees and costs pursuant to U.S.C. § 1988.

E.     Order such other and further relief as the Court deems appropriate.

F.     Designate that the trial take place before the U. S. District Court in Omaha, Nebraska.

Dated: February 12, 2021

Respectfully submitted,


**s/ Samuel J. Schiller**
Tennessee Attorney Registration #021810
Oklahoma Bar Association #016067
Attorney for Plaintiffs
Schiller Law Firm
Suite 200, 4113 Cumby Road
Cookeville, TN 38501
Telephone: (931) 528 5050
Email: sjs@schillerlawfirm.com

*Attorney for Plaintiffs*